UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CLIFFORD ALVES, JR., AND
TROY SIMOES,
    Plaintiffs,

v.                        CIVIL ACTION NO. 18-10654-MPK

CITY OF GLOUCESTER, THE GLOUCESTER
POLICE DEPARTMENT, AND POLICE
CHIEF LEONARD CAMPANELLO,
    Defendants.

## ORDER ON DEFENDANTS' MOTIONS TO DISMISS PLAINTIFFS' FIRST AMENDED COMPLAINT (##24, 26).

KELLEY, U.S.M.J.

This matter is before the court on defendants City of Gloucester, Gloucester Police Department, and Police Chief Leonard Campanello's Motions to Dismiss (##24, 26) the First Amended Complaint (FAC) (#21) filed by plaintiffs Clifford Alves, Jr., and Troy Simoes. The court has considered the motions, plaintiffs' Joint Opposition (#28), and defendants' Reply (#31). As set out below, defendants' motions are denied.

I.    Facts.

    A. Officer Alves.

Alves served as member of the 82nd Airborne Division in the United States Army beginning in 1983 and has been a member of Army Reserves since 1987. (#21 ¶ 7.) He began working as a police officer for the City of Gloucester in 1998. (#21 ¶ 8.) Beginning in 1999,

Alves experienced difficulty receiving time off from the Gloucester Police Department (GPD) to fulfill his contractual obligations to the Army Reserves. (#21 ¶¶ 9, 11.) Sometime during 2006, Alves returned from the second of three tours of active combat duty in the Middle East, and when he inquired about his accrued vacation, sick, and personal time, the personnel director responded, "Why do you need vacation days? You've been on vacation for a year." (#21 ¶¶ 14, 15, 17.)

On February 3, 2014, Alves requested a personal day, but he was called into work to rewrite a report. (#21 ¶¶ 20, 21.) He was not paid overtime for the work, and he had to file a grievance to recover the pay. (#21 ¶¶ 22, 23.) He alleges he was immediately retaliated against when, on his next scheduled rotation, he was pulled from his assigned cruiser and ordered to do remedial report writing. (#21 ¶¶ 24, 25.) In addition, he was removed from the Police Department Training Division. (#21 ¶ 26.) Alves alleges these punishments were retaliation for requesting time off for military service and for filing a grievance. (#21 ¶ 27.)

In December 2014, Alves scheduled a two-week vacation for April 2015. (#21 ¶ 30.) He alleges that although he was awarded a block of fourteen vacation days, his supervisor changed it to thirteen vacation days and docked Alves the fourteenth day as a personal day. (#21 ¶¶ 30, 31.) Alves alleges that personal days are more valuable than vacation days because they are more flexible. (#21 ¶ 32.) On August 23, 2015, Alves filed a grievance in order to recover the personal day; it was returned, and Alves was docked a vacation day instead. (#21 ¶¶ 28, 33.)

Alves contends he was retaliated against for filing the August 23, 2015, grievance when his supervisor questioned Alves' response time to a call and opened an investigation into Alves. (#21 ¶ 34.) Although the investigation revealed no wrongdoing on Alves' part, immediately

following the investigation, Alves was removed from the Police Department Training Division. (#21 ¶¶ 36, 37.)

Alves alleges that on October 1, 2015, he was "disproportionately punished" when he was placed on administrative leave and put under house arrest for allegedly dumping leaves and grass at a compost yard. (#21 ¶ 37.) According to Alves, this minor offense is ordinarily punished by city ordinance with a twenty-dollar fine, but he was "intentionally retaliated against and disproportionately disciplined in violation of USERRA"[1] when he received a two-day suspension without pay, was denied permission to seek outside employment during the suspension, and was fined $300.00. (#21 ¶ 38.) Alves alleges other officers, who are not veterans and/or reservists, also dumped leaves in the same location, and the only discipline they received was a written warning from the Department of Public Works (DPW). (#21 ¶ 42.) While on administrative leave, Deputy Chief McCarthy ordered Alves not to contact the DPW. (#21 ¶ 45.) If he had been permitted to contact DPW, Alves asserts he could have obtained evidence that he was permitted to dump leaves and grass at the compost yard. (#21 ¶ 46.) He further alleges that other officers have committed more serious offenses but were not suspended or disciplined. (#21 ¶ 47.)

In January 2016, Alves was interrogated and reprimanded after Boylston Police Academy Director John Mulloy sent Defendant Campanello a letter of thanks for Alves' instruction at the academy. (#21 ¶¶ 48-52.)

On April 13, 2016, Alves was involved in a training accident at Fort Devens Firearms Range while working for the Massachusetts Police Training Council as a firearms instructor.

---

[1] USERRA is the Uniformed Services Employment and Reemployment Act, 38 U.S.C. §§ 4301-4335.

(#21 ¶ 53.)  That day, he was informed there would be an investigation into the incident and was placed on administrative leave for 102 days until the investigation was completed.  (#21 ¶ 54.)  The investigation ultimately revealed Alves was not at fault, and the incident was classified as a training accident.  (#21 ¶ 60.)  Alves alleges that being placed on administrative leave for a training accident is another example of intentional discrimination and harassment in violation of USERRA.  (#21 ¶ 57.)

In addition, on May 13, 2016, Campanello suspended Alves' license to carry a firearm (LTC) and added a "No Outside Employment" clause to Alves' administrative leave, reversing Campanello's prior approval of outside employment.  (#21 ¶ 62.)  Alves alleges Campanello had never revoked or suspended an officer's LTC before May 13, 2016, including after the following: (i) an October 15, 2015, incident where an officer was placed on administrative leave for a substance abuse problem; (ii) a February 2016 incident where a civilian took out a restraining order against an officer; or (iii) a July 2016 incident where an officer admitted he had a substance abuse problem.  (#21 ¶ 63.)  In addition, Alves asserts Campanello refused to provide him or his union attorney a copy of the report which explained why Alves' LTC was suspended.  (#21 ¶ 65.)

According to Alves, in order to appeal Campanello's LTC revocation decision, Alves was required to go to Gloucester District Court, which is located in the same building as the GPD.  (#21 ¶ 66.)  However, Alves was warned that he would be arrested for trespassing if he entered the GPD building without being escorted by Deputy Chief McCarthy, thereby making it impossible for him to appeal Campanello's LTC decision without special permission from Campanello.  (#21 ¶ 67.)

While Alves was on administrative leave, Campanello agreed to allow Alves to go on a pre-planned trip. (#21 ¶ 72.) Because he was on administrative leave, Alves alleges he should have been able to take the trip without using vacation time. (#21 ¶ 73.) On August 3, 2016, however, Alves discovered he had been charged four vacation days for the trip. (#21 ¶ 74.) After Alves wrote to Deputy Chief McCarthy inquiring why he had been charged vacation days, Campanello wrote a response directing Alves to seek remedy from the Mayor's office. (#21 ¶ 76.)

On December 24, 2016, Alves alleges he was harassed by his supervisor over an incomplete police report. (#21 ¶ 79.) Alves alleges his supervisor terminated him from his position as a training officer "despite Alves being one of only four officers in the [GPD] to go through the forty-hour Field Officers Training Course and who has the most experience in the [GPD] as a trainer in multiple police disciplines." (#21 ¶ 80.)

    B. Officer Simoes.

Simoes served in the United States Coast Guard from 2002-2006, and thereafter, in the Coast Guard Reserves until 2014. (#21 ¶ 83.) In 2012, Simoes began working as a police officer for the GPD, and that summer, when he requested time off work to fulfill his commitment to the Reserves, he began experiencing harassment. (#21 ¶¶ 84, 85.) He alleges that, beginning in 2013, after he turned in his drill schedule, Campanello instructed Deputy Chief McCarthy and shift supervisors to harass Simoes as well. (#21 ¶ 88.) Simoes alleges Deputy Chief McCarthy made multiple disparaging remarks about Simoes' service, including asking when Simoes would leave the Reserves, informing Simoes that he could make more money working overtime with GPD, and telling Simoes that he was costing the City of Gloucester a lot of money. (#21 ¶¶ 89, 90, 97-99.) In addition, Simoes contends that, despite knowing the Coast Guard does not

5

provide separate orders for each drill date, Campanello and the GPD required Simoes to provide separate orders. (#21 ¶ 93.)

Although Simoes provided letters from his Coast Guard superiors, he contends the harassment continued. (#21 ¶ 94.) When Simoes asked Lt. Aiello why he was being treated this way, Aiello responded, "Chief [Campanello] is on my ass about this, Troy, it's not coming from me, and he [Chief Campanello] won't let it go." (#21 ¶ 95.) Simoes alleges the GPD, at Campanello's direction, was intentionally harassing Simoes so Simoes would resign from military service. (#21 ¶ 96.)

Simoes alleges the harassment resulted in a physical assault in the summer of 2014, when Campanello "shoulder-checked" Simoes into a copy machine. (#21 ¶ 102.) Simoes further contends that, because of his military service, he was routinely not being paid in a timely manner for his police work. (#21 ¶ 110.) Simoes asserts that he asked Campanello's secretary about why he was not being paid, and about a week later, Campanello's secretary also shoulder-checked him into a copy machine. (#21 ¶ 113.) Simoes alleges he was not being paid because Campanello instructed his secretary not to submit Simoes' hours. (#21 ¶ 112.)

Further, Simoes asserts that although he got the second-highest score on the Sergeant's exam, and although the person with the highest score left the GPD, he was not promoted to the open Sergeant's position. (#21 ¶¶ 106-108.) Simoes alleges that, ultimately, this harassment and discrimination caused him not to renew his contract with the Coast Guard. (#21 ¶ 114.)

Despite not renewing his contract with the Reserves, Simoes asserts the harassment continued. In January 2015, for example, Deputy Chief McCarthy offered Simoes a secondary boat operator position based on Simoes' training and experience in the Coast Guard, and Simoes

6

accepted the offer. (#21 ¶¶ 116, 117.) Later, however, McCarthy told Simoes not to bother applying for the boat operator position, implying that if McCarthy promoted Simoes, Campanello would reprimand McCarthy. (#21 ¶¶ 120-122.)

After becoming a union representative in 2015, Simoes began documenting Campanello's alleged "abuse of power, corruption, USERRA violations, harassment, intimidation, [and] misappropriation of funds." (#21 ¶ 123.) At the same time, Simoes, as secretary of the Gloucester Police Patrolman's Association, grieved two incidents related to Campanello. (#21 ¶¶ 124-26.) After the grievances were filed, Campanello directed Simoes to re-write the grievances, or else Campanello would remove the union-supplied television and laptops from the police station. (#21 ¶¶ 127, 128.) Simoes complied, but Campanello made Simoes re-write the grievances a second time and remove allegations that Campanello "grant[ed] special privileges and special treatment to certain officers and civilians, disregard[ed] the safety of patrolm[e]n, and damag[ed] the [GPD's] morale." (#21 ¶¶ 133, 134.)

On May 10, 2016, Simoes and three other officers wore "Free Cliffy" t-shirts to support Alves after he was placed on administrative leave. (#21 ¶ 137.) Two days later, on May 12, 2016, Simoes was terminated from his position at the Gloucester Firearms Training Facility, which Simoes asserts was in retaliation for his military service and for exercising his right to free speech. (#21 ¶ 138.) Although Campanello said Simoes' termination was a financial decision, Simoes received a text message from his watch commander that contradicted Campanello because it instructed the watch commander to post openings for new instructors. (#21 ¶ 140.)

In June 2016, Simoes asserts the GPD opened two frivolous investigations into his conduct—the first related to his wearing the "Free Cliffy" t-shirt, and the second because he missed an overtime shift due to illness. (#21 ¶¶ 141-144.) Simoes alleges, on information and

belief, that GPD has not opened an investigation because of a cancelled shift in thirty years, and these investigations were opened solely to harass him because of his military service and to distract him while he was preparing for a second Sergeant's exam. (#21 ¶ 145, 146.) He asserts he was further harassed when the department accused him of creating a fake Facebook account with Alves to post derogatory information about the GPD. (#21 ¶ 148.)

Simoes also alleges another investigation was opened concerning his alleged role in the Pond Road Sex Scandal. (#21 ¶¶ 150-52.) Simoes filed a harassment complaint with the City of Gloucester Personnel Office in August 2016 relating all of these incidents. (#21 ¶ 153.) He alleges that the Personnel Director of the GPD attempted to bribe or extort him when she informed him that Campanello said if Simoes withdrew the harassment complaint, he would be promoted. (#21 ¶¶ 154, 155.)

## II. Discussion.

Defendants seek to dismiss plaintiffs' FAC pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that it fails to state a claim for which relief can granted under either USERRA or 42 U.S.C. § 1983.

### A. Standard of Review.

A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state a claim. In deciding such a motion, a court must "'accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor.'" *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)). When considering a motion to dismiss, a court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint,

matters of public record, and facts susceptible to judicial notice." *Haley*, 657 F.3d at 46 (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 15 (1st Cir. 2003)).

In order to survive a motion to dismiss under Rule 12(b)(6), the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to cross the "line from conceivable to plausible." *Id.* at 555, 570.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). However, the court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 555). Simply put, the court should assume that well-pleaded facts are genuine and then determine whether such facts state a plausible claim for relief. *Id.* at 679.

B. USERRA.

USERRA prohibits employment discrimination on the basis of an employee's military status; it applies to both reservists and active duty servicemembers. *See generally* 38 U.S.C. §§ 4301-4335. Congress enacted USERRA in 1994, in response to the Supreme Court's decision in *Monroe v. Standard Oil Company,* 452 U.S. 549 (1981), which held that USERRA's predecessor statute, the Veterans' Reemployment Rights Act, permitted discrimination claims based on military status only where an employee could show the discrimination was "motivated *solely*" by an employee's military status. *See Velazquez-Garcia v. Horizon Lines of Puerto Rico,* 473 F.3d

11, 16 (1st Cir. 2007) (emphasis in original) (citing *Monroe,* 452 U.S. at 559). "The 1994 enactment [of USERRA] broadened the statute by providing that a violation occurs when a person's military service is a 'motivating factor' in the discriminatory action, even if not the sole factor." *Sheehan v. Dept. of Navy,* 240 F.3d 1009, 1013 (Fed. Cir. 2001) (citing 38 U.S.C. § 4311(c)(1)).

By its terms, USERRA "prohibit[s] discrimination against persons because of their service in the uniformed services." *Id.* at § 4301(a)(3). Section 4311, USERRA's anti-discrimination provision, states, in relevant part,

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform service in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service or obligation.
> . . .
> (c) An employer shall be considered to have engaged in actions prohibited—(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service.

38 U.S.C. § 4311.

Thus, an employee asserting a USERRA discrimination claim must allege that he or she suffered an adverse employment action and that that the employee's military service was a "motivating or substantial factor" in the employer's action. *Id.; see also Anguioni v. Town of Billerica,* 838 F.3d 34, 39 (1st Cir. 2016) (citing *Velazquez-Garcia,* 473 F.3d at 17, and *Sheehan,* 240 F.3d at 1013); *Conners v. Billerica Police Dept.*, 679 F. Supp. 2d 218, 227 (D. Mass. 2010).

Discriminatory motivation under USERRA can be shown by direct or circumstantial evidence, including, for example, (i) proximity in time between the employee's military activity and the adverse employment action; (ii) inconsistencies between the employer's proferred reasons and other actions of the employer; (iii) an employer's expressed hostility toward people protected by USERRA, together with knowledge of the employee's military activity; and (iv) disparate treatment of USERRA-covered employees compared with non-military employees with similar work records or offenses. *Anguioni,* 838 F.3d at 17 (citing *Sheehan,* 240 F.3d at 1014); *see also Conners,* 679 F. Supp. 2d at 226 (citing *Sheehan,* 240 F.3d at 1014).

   1. *Alves' Claims.*

As set out above, in order to state a USERRA discrimination claim, Alves must allege sufficient facts to show that he suffered an adverse employment action, and his military service was a motivating or substantial factor in defendants' conduct. The court finds Alves has alleged sufficient facts to state a USERRA discrimination claim. For example, he alleges that he was punished in retaliation for requesting time off for military duties and for filing grievances related to the denial of that time off. (#21 ¶¶ 23-27, 28-36.)[2] Alves also alleges he was punished more severely for a minor offense than non-military employees were punished for more serious offenses. (#21 ¶¶ 37-47.) He contends he was placed on administrative leave following a training accident, that the administrative leave continued even after the department's internal

---

[2] Relying on *O'Neil v. Putnam Retail Management, LLP,* 407 F. Supp. 2d 310, 315 (D. Mass. 2005), defendants assert that the court cannot consider any factual allegations concerning verbal harassment of Alves that occurred in 2006 because the catch-all four-year statute of limitations set out at 28 U.S.C. § 1658 applies to USERRA claims. This is an inaccurate statement of the law in light of the 2005 enactment of 32 U.S.C. § 4327(b), which expressly prohibits application of any time limit to USERRA claims. *See* 32 U.S.C. § 4327(b) (stating "there shall be no limit on the period for filing the complaint or claim"); *see generally* Piscitelli, K. & Still, E., *The USERRA Manual* § 8:6 (June 2018 update).

investigation concluded Alves was not at fault for the training accident, and that during his administrative leave, he was charged vacation days. (#21 ¶¶ 61, 72-76.) In addition, he alleges he was punished more severely than non-military employees during his administrative leave because his LTC was revoked, and he was not permitted to seek outside employment. (#21 ¶¶ 62, 80, 81.) Taken together, these allegations support an inference that defendants' actions were substantially motivated by Alves' military service. The court finds the FAC states a USERRA discrimination claim upon which relief can be granted as to Alves.

2. *Simoes' Claims.*

Likewise, Simoes must also allege facts sufficient to establish he suffered an adverse employment action, and his military service was a motivating or substantial factor in defendants' conduct, in order to state a USERRA discrimination claim. Simoes alleges that his superiors made comments disparaging Simoes' military service, including asking Simoes when he would leave the reserves, telling him that his service in the Coast Guard Reserves was "costing the city [Gloucester] a lot of money," and informing him that the police department was "extremely unhappy with [Simoes'] service." (#21 ¶¶ 89-90, 92, 99.) He asserts that defendant Campanello instructed his subordinates to harass Simoes so that Simoes "would resign from military service." (#21 ¶¶ 95, 96.) Although an oral reprimand does not qualify as an adverse employment action, *see Conners,* 679 F. Supp. 2d at 227 (internal citation omitted), the court can consider the statements as "evidence of a company's general atmosphere of discrimination." *Velazquez-Garcia,* 473 F.3d at 18-19.

Further, Simoes contends that he was overlooked for a promotion, despite his qualifications, as a part of this harassment. (#21 ¶¶ 107, 108.) He alleges he was not timely compensated for his police work on account of his military service. (#21 ¶¶ 110, 112.) Simoes

12

asserts that this treatment caused him to not renew his contract with the Coast Guard, resulting in a military discharge. (#21 ¶ 114.) Despite his resignation from the Coast Guard Reserves, Simoes asserts the harassment continued. For example, defendant McCarthy advised Simoes "not to bother" applying for a boat operator position and implied that defendant Campanello would discipline McCarthy if he promoted Simoes to the position. (#21 ¶ 122.) In addition, Simoes was terminated from his job at the Gloucester Firearms Training Facility, allegedly in retaliation for his military service and for supporting Alves by wearing a "Free Cliffy" shirt after Alves was placed on administrative leave. (#21 ¶¶ 137, 138.) He contends multiple internal investigations were opened "solely to harass [Simoes] because of his military service and to distract him while he was trying to prepare for [a] Sergeant's exam." (#21 ¶¶ 141-46.) The court finds that Simoes has alleged sufficient facts to state a USERRA claim because he has alleged he is covered by USERRA, he suffered adverse employment actions, and his military service was a motivating or substantial factor in defendants' conduct.

    C.  <u>Section 1983 Claims.</u>

Defendants assert plaintiffs have failed to state a claim under 42 U.S.C. § 1983 because the FAC "fails to identify any specific constitutional right alleged infringed upon" by defendants. The FAC alleges in Count III and Count IV that, based upon the same facts supporting plaintiffs' USERRA claims, "Defendants have violated [plaintiffs'] constitutional and civil rights under 42 U.S.C. § 1983." (#21 ¶¶ 162, 164.) In addition, the FAC also alleges that defendants violated Alves' right to due process and retaliated against Simoes for exercising his First Amendment right in wearing the "Free Cliffy" t-shirt. (#21 ¶¶ 82, 138.)

Plaintiffs respond that "it goes without saying that the Plaintiffs had a right that the Defendants obey the law as spelled out in USERRA." Joint Opposition (#28) at 5. Further, they

13

assert they had a "due process right to have the law applied to them and not be discriminated against and harassed because of their military service and duties." *Id.* Finally, they contend they had "a constitutional right to Equal Protection and Treatment under USERRA to not be treated differently because of their status as military service members." *Id.* Plaintiffs assert the rights that are at stake in the FAC "are well-established and need no further elucidation in a complaint." *Id.* at 6.

In reply, defendants assert for the first time that plaintiffs' § 1983 claims should be dismissed because they are preempted by USERRA, "which provides a comprehensive enforcement mechanism and subsumes constitutional claims." Reply (#31) at 2 (citing *Morris-Hayes v. Bd. of Ed. Of Chester Union Free Sch. Dist.,* 423 F.3d 153, 161 (2d Cir. 2005); *Ferguson v. Walker,* 397 F. Supp. 2d 964, 971 (C.D. Ill. 2005); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 438 (E.D. Pa. 1998)).

The court has found the FAC states USERRA claims as to both Alves and Simoes. Plaintiffs' § 1983 claims are based upon the same factual allegations as their USERRA claims. Defendant raise the § 1983 preemption issue for the first time in their Reply (#31), and plaintiffs have not had an opportunity to respond or brief the issue. Accordingly, the court will not decide whether USERRA preempts plaintiffs' § 1983 claims at this juncture, where the issue has not been fully briefed by the parties and, in any event, will not affect the scope of discovery in this case. Defendants' motion to dismiss the § 1983 claims on the grounds they are preempted by USERRA is denied without prejudice.

D. <u>Claims Against the GPD.</u>

Finally, with respect to plaintiffs' claims against the GPD, defendants assert these claims should be dismissed because the GPD is not a "suable entity," as it is a municipal department of

assert they had a "due process right to have the law applied to them and not be discriminated against and harassed because of their military service and duties." *Id.* Finally, they contend they had "a constitutional right to Equal Protection and Treatment under USERRA to not be treated differently because of their status as military service members." *Id.* Plaintiffs assert the rights that are at stake in the FAC "are well-established and need no further elucidation in a complaint." *Id.* at 6.

In reply, defendants assert for the first time that plaintiffs' § 1983 claims should be dismissed because they are preempted by USERRA, "which provides a comprehensive enforcement mechanism and subsumes constitutional claims." Reply (#31) at 2 (citing *Morris-Hayes v. Bd. of Ed. Of Chester Union Free Sch. Dist.,* 423 F.3d 153, 161 (2d Cir. 2005); *Ferguson v. Walker,* 397 F. Supp. 2d 964, 971 (C.D. Ill. 2005); *Satterfield v. Borough of Schuylkill Haven*, 12 F. Supp. 2d 423, 438 (E.D. Pa. 1998)).

The court has found the FAC states USERRA claims as to both Alves and Simoes. Plaintiffs' § 1983 claims are based upon the same factual allegations as their USERRA claims. Defendant raise the § 1983 preemption issue for the first time in their Reply (#31), and plaintiffs have not had an opportunity to respond or brief the issue. Accordingly, the court will not decide whether USERRA preempts plaintiffs' § 1983 claims at this juncture, where the issue has not been fully briefed by the parties and, in any event, will not affect the scope of discovery in this case. Defendants' motion to dismiss the § 1983 claims on the grounds they are preempted by USERRA is denied without prejudice.

D. <u>Claims Against the GPD.</u>

Finally, with respect to plaintiffs' claims against the GPD, defendants assert these claims should be dismissed because the GPD is not a "suable entity," as it is a municipal department of

the City of Gloucester rather than an independent legal entity. Defendants are correct, and the court will treat plaintiffs' claims against the GPD as claims against the City of Gloucester. *See, e.g., Winfield v. Perocchi*, No. 1:14-cv-12219-IT, 2015 WL 4482940, at \*3 (D. Mass. July 22, 2015) (internal citations omitted) (treating claims against Lawrence Police Department as claims against the City of Lawrence).

III.    Conclusion.

For the reasons set out above, defendants' motions to dismiss plaintiffs' USERRA claims are denied. The motions to dismiss plaintiffs' § 1983 claims are denied without prejudice to renewal.

/s/ M. Page Kelley
M. Page Kelley
January 18, 2019                                   United States Magistrate Judge