UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Docket No.: 1:18-cv-10654-MPK

CLIFFORD ALVES, JR. AND TROY SIMOES,

    Plaintiffs,

    v.

CITY OF GLOUCESTER, THE GLOUCESTER
POLICE DEPARTMENT,[1] AND POLICE
CHIEF LEONARD CAMPANELLO,

    Defendants

## DEFENDANT CITY OF GLOUCESTER'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT UNDER FED. R. CIV. P. 56

### INTRODUCTION

Summary judgment should enter for the City on the Plaintiffs' claim under the Uniformed Services Employment and Reemployment Act, 38 U.S.C. §§ 4301-4335 ("USERRA") because they cannot adduce evidence that their military status was a motivating or substantial factor for any adverse employment action. Rather, the Plaintiffs were at times legitimately investigated for issues totally unrelated to their military service. As one example, the City conducted an investigation into Alves' shooting of another officer during a firearms training. In addition, based on the undisputed facts of this case, no reasonable jury could find the Plaintiffs' work

---

[1] The Plaintiffs' claims against the Gloucester Police Department ("GPD") have been dismissed because police departments are not suable entities. The duplicative claims against the GPD are treated as claims against the City. Alves v. City of Gloucester, 2019 WL 267462, at *7 (D. Mass. Jan. 18, 2019).

environment was "threatening or humiliating" or beyond the capacity of a reasonable police officer to endure.

The Plaintiffs' claims under 42 U.S.C. § 1983 fail because they are preempted by USERRA and a First Amendment claim would fail because neither of the Plaintiffs spoke as a citizen on a matter of public concern. Simoes wearing "Free Cliffy" t-shirts in the police department went directly to disrupting order, harmony and respect for internal investigations and the chain of command.

Finally, the Plaintiffs cannot adduce evidence to establish that a municipal policy or custom caused any alleged constitutional violations or that any final policymaking officials acted with deliberate indifference.

For these reasons and others as addressed below, summary judgment should enter for the City on all counts in the Plaintiffs' Complaint: (I) USERRA (Alves); (II) USERRA (Simoes); (III) 42 U.S.C. § 1983 (Alves); and (IV) 42 U.S.C. § 1983 (Simoes).

## UNDISPUTED FACTS

The City incorporates its Statement of Undisputed Material Facts in Support of Summary Judgment under Local Rule 56.1.

## ARGUMENT

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate in this case because there is no genuine issue for trial. "[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322, (1986), quoting Fed.R.Civ.P. 56(c).  In deciding a motion for

summary judgment, the Court must construe the facts and inferences in a light most favorable to

the non-moving party.  However, the Court need not credit "conclusory allegations, improbable

inferences, acrimonious invective, or rank speculation." Gray v. Cummings, 917 F.3d 1, 5 (1st

Cir. 2019).  The burden on the moving party may be discharged by showing the District Court

that there is an absence of evidence to support the nonmoving party's case.  Celotex Corp., 477

U.S. at 325.  Applying this legal standard to the undisputed facts demonstrates that summary

judgment should enter for the Defendants as to all claims in the Plaintiffs' Complaint.

## II.    PLAINTIFFS' USERRA CLAIMS FAIL AS A MATTER LAW

The Plaintiffs cannot adduce evidence to support USERRA claims. The statute prohibits

employment discrimination on the basis of an employee's military status; it applies to both

reservists and active duty servicemembers. Alves v. City of Gloucester, 2019 WL 267462, at *4-

5 (D. Mass. Jan. 18, 2019). A violation occurs when a person's military service is a motivating

factor in the discriminatory action, even if not the sole factor. Alves, 2019 WL 267462, at *4-5,

citing Sheehan v. Dept. of Navy, 240 F.3d 1009, 1013 (Fed. Cir. 2001), citing 38 U.S.C. §

4311(c)(1). By its terms, USERRA "prohibit[s] discrimination against persons because of their

service in the uniformed services." Id. at § 4301(a)(3).

In relevant part, USERRA's anti-discrimination provision (Section 4311) provides:

(a) A person who is a member of, applies to be a member of, performs, has performed,
applies to perform, or has an obligation to perform service in a uniformed service shall
not be denied initial employment, reemployment, retention in employment, promotion or
any benefit of employment by an employer on the basis of that membership, application
for membership, performance of service, application for service or obligation.
...
(c) An employer shall be considered to have engaged in actions prohibited—(1) under
subsection (a), if the person's membership, application for membership, service,
application for service, or obligation for service in the uniformed services is a motivating
factor in the employer's action, unless the employer can prove that the action would have
been taken in the absence of such membership, application for membership, service,
application for service, or obligation for service.

38 U.S.C. § 4311; <u>Alves</u>, 2019 WL 267462, at *4-5.

Thus, an employee asserting a USERRA discrimination claim must establish that he or she suffered an adverse employment action and that the employee's military service was a "motivating or substantial factor" in the employer's action. <u>Alves</u>, 2019 WL 267462, at *4-5; <u>Anguioni v. Town of Billerica</u>, 838 F.3d 34, 39 (1st Cir. 2016); <u>Conners v. Billerica Police Dept.</u>, 679 F. Supp. 2d 218, 227 (D. Mass. 2010). Discriminatory motivation under USERRA can be shown by direct or circumstantial evidence, including, for example, (i) proximity in time between the employee's military activity and the adverse employment action; (ii) inconsistencies between the employer's proffered reasons and other actions of the employer; (iii) an employer's expressed hostility toward people protected by USERRA, together with knowledge of the employee's military activity; and (iv) disparate treatment of USERRA-covered employees compared with non-military employees with similar work records or offenses. <u>Alves</u>, 2019 WL 267462, at *4-5. Applying this legal standard to the undisputed facts demonstrates that summary judgment should enter for the City because the Plaintiffs cannot adduce evidence that their military status was a motivating or substantial factor for any adverse employment action.

### A.    Alves cannot provide evidence to support a USERRA claim

Alves cannot offer any facts to support an inference that Campanello or McCarthy ordered or conducted illegitimate internal investigations in 2015 and 2016 in retaliation for Alves military service that ended a decade earlier in 2006 or 2007. **Exhibit 1 – Deposition of Clifford Alves, Jr., p. 49**. The City's 2015 investigation of Alves for his illegal dumping cannot support a USERRA claim. On October 1, 2015, Gloucester DPW Director Michael B. Hale contacted then Deputy Chief McCarthy about a situation of illegal dumping. **Exhibit 6 – Internal Investigation of Officer Clifford Alves, p. 3.** Hale emailed McCarthy photos of a pick-up truck dumping

leaves and grass clippings outside the City's closed compost facility. Exhibit 6, p. 3. Hale wished to have the perpetrator charged with illegal dumping. Exhibit 6, p. 3. Alves was revealed to be the perpetrator of the illegal dumping by a license place search. Exhibit 6, p. 3. He was placed on paid administrative leave while the situation was investigated. Exhibit 6, p. 3. During the investigation, Alves claimed that he had permission to illegally dump his refuse from previous DPW employees dating back about 12 to 15 years. Exhibit 6, p. 4. Alves does not recall other police officers illegally dumping yard waste in the way that he did. Exhibit 1, p. 155. After a union grievance, Alves was ultimately suspended by the City for one day without pay and with a full accounting of the investigation and discipline to be placed in his personnel file. **Exhibit 7 – Memo from Personnel Department, dated November 16, 2015**.

Likewise, the City's investigation of Alves for shooting another officer with a gun cannot support a USERRA claim. On April 13, 2016, Alves accidently shot another firearms trainer at Fort Devens. Exhibit 1, pp. 91-92. The Department of Defense (DOD) investigated Alves' shooting of this instructor, Jamie Griffin. Exhibit 1, p. 102. The DOD then turned the investigation over to the criminal investigation department at West Point. Exhibit 1, pp. 102-103. The State Police also conducted a criminal investigation. Exhibit 1, pp. 103-104. The Gloucester Police Department waited until the criminal investigations were over before conducting an internal investigation. Exhibit 1, p. 106.

The City of Gloucester hired a third-party to investigate the shooting. Exhibit 1, p. 105. On May 13, 2016, Campanello notified Alves that Investigator Alfred Donovan would lead an internal investigation into his shooting Griffin at Fort Devens on April 13, 2016. **Exhibit 8 – Notice to Alves, dated May 13, 2016.** Investigator Donovan recommended that Campanello suspend Alves' License to Carry because, under the circumstances where a shooting occurred

with significant injures, a civilian's LTC would be suspended. **Exhibit 9 – Deposition of John McCarthy, pp. 29-30**. Alves was notified that he would be contacted for a Fitness for Duty Evaluation and until the investigation was completed his License to Carry Firearms (LTC) was suspended and he was not allowed outside employment. Exhibit 8.

Paul L'Italien took over the investigation from Donovan. Exhibit 9, pp. 15-16, 24-27, 29-30; **Exhibit 4  - Independent Internal Affairs Investigation (Volume 1); Exhibit 5 – Independent Internal Affairs Investigation (Volume 2)**. During the investigation, Campanello sent an email to Human Resources Director Donna Leete requesting that the investigation be expedited so that Alves could return to work. Exhibit 1, p. 109. On July 7, 2016, Investigator L'Italien issued an Independent Internal Affairs Investigation of Alves' shooting. Exhibit 4. Investigator L'Italien found that there was insufficient evidence to sustain a violation of department policy against Alves for the shooting because no witnesses reported that they observed Alves' firearm discharge and strike Griffin. Exhibit 4. Investigator L'Italien found that Alves' explanation for his shooting "is possible." Exhibit 4. Ultimately, Alves did not receive any discipline for the accidental shooting. However, based on the circumstances of the shooting, Campanello reasonably rescinded his previous approval for Alves to perform outside employment as a firearms instructor on July 21, 2016. **Exhibit 17 – Deposition of Leonard Campanello, pp. 131-138**. These investigations cannot support a USERRA claim because an investigation of an employee, without more, is insufficient to constitute an adverse employment action. Gasperini v. Dominion Energy New England, Inc., 2012 WL 2402804, at *12 (D. Mass. June 25, 2012), citing Balderrama v. Kraft Foods North Am., Inc., 307 F.Supp.2d 1012, 1014 (N.D.Ill. 2004); Blackden v. Stanley, No. 02–475–M, 2003 WL 23100321, at *6 (D.N.H. Dec.3 1, 2003); Rider v. Town of Farmington, 162 F.Supp.2d 45, 52 (D.Conn. 2001). Furthermore,

there is no evidence that the investigation was improperly delayed or was done so due to Alves's previous military service. Exhibits 4 and 5.

Alves cannot adduce evidence that he was treated differently due to his then decade old service in the military. According to Alves, approximately half (50%) of the 13 Gloucester police officers on his midnight shift served in the military – Army, Navy, Coast Guard. Exhibit 1, pp. 113-114. Alves maintains that other veterans and officers (Chris Frates and Steven DeCosta) were treated better than him when they were deployed through the military. Exhibit 1, pp. 62-65. Alves does not know why these officers were treated differently for their military service but speculates that it could be because he was a union representative. Exhibit 1, p. 67.

On September 1, 2016, Alves filed a complaint with Human Resources alleging "unfair treatment and harassment." **Exhibit 2 – Alves Complaint to HR, dated September 1, 2016.** Notably, in this 2016 complaint, Alves does not allege that any unfair treatment or harassment was due to military service. Exhibit 2, pp. 1-5. Similarly, in a 2018 complaint, Alves does not allege discrimination or harassment due to his military service that had previously ended in 2006 or 2007. **Exhibit 3 – Alves' Complaint, dated January 13, 2018.**

Alves does not allege that officers were treated unfairly due to their military service. Rather, he claims that McCarthy was unfair because he held patrol officers to a higher standard than supervisory officers. Exhibit 1, pp. 31-32. According to Alves, supervisors were not held accountable in situations where patrol officers were, and McCarthy once said that there was no reason a patrol officer should be making more than a retired lieutenant on a detail. Exhibit 1, p. 31. Alves does not know why McCarthy was out to get him, but says that it was "personal." Exhibit 1, pp. 34-35.

As such, summary judgment should enter for the City because Alves cannot adduce evidence that his military status was a motivating or substantial factor for any adverse employment action.

**B.      Simoes cannot provide evidence to support a USERRA claim**

Simoes cannot offer facts to support an inference that any adverse employment actions were in retaliation for his military service. As an initial matter, Simoes has never been disciplined or reprimanded by the Gloucester Police Department. **Exhibit 10 – Deposition of Troy Simoes, pp. 62-63, 264-265**. In part, Simoes bases his claim on two internal investigations related to (1) his cancelling an overtime shift and (2) whether he had contacted the media. Exhibit 10, pp. 63-69, 176. Other non-military officers were also investigated for these issues. These investigation cannot support a USERRA claim as Simoes was not disciplined or even interviewed and an investigation of an employee, without more, in insufficient to constitute an adverse employment action. Gasperini, 2012 WL 2402804, at *12.

Regarding the cancelling of an overtime shift, Simoes and Officer Michael Quinn were investigated for removing themselves from motorcycle duty for the Fiesta Parade without prior notification. **Exhibit 11 – Investigation for failing to report for duty, pp. 1-19.** Lt. David Quinn (Navy service) reported that the officers caused a tremendous safety issue to the public and other officers by failing to show up for their assignments without providing any notice. Exhibit 11, p. 9. After investigation, neither of the officers (Simoes nor Michael Quinn) were disciplined or punished. Exhibit 10, pp. 73-74; Exhibit 11, p. 1. There is no evidence that this investigation was conducted due to Simoes' military service. Indeed, Officer Michel Quinn was also investigated and has not served in the military. Exhibit 10, pp. 76-77.

Likewise, Simoes cannot claim that he was singled out for the second investigation due to his military status. Along with many other officers, Simoes was involved in an investigation about whether officers had leaked confidential information to the media. Exhibit 10, pp. 80-86. Simoes and the other officers were given written questions to answer. Exhibit 10, pp. 80-86; **Exhibit 12 – Written questions regarding September 14, 2016.** Simoes was not interviewed and did not receive any discipline as a result of this inquiry. Exhibit 10, pp. 85-87.

The assignment of the boat operator position was not related to Simoes' military service. Rather, Simoes alleges that he did not get a boat operator position because he had previously requested an added road detail officer for a snowstorm. (Contractually Simoes did not have enough GPD service time to fill the primary position). According to Simoes, in the winter of 2015, Deputy Chief McCarthy requested that Simoes submit a resume for the boat operator position. But after Simoes' request for an officer detail during a winter storm was denied, McCarthy told him not to bother applying for the boat job. **Exhibit 14 – Harassment Complaint**; Exhibit 10, pp. 57-59. Kevin Mackey is the primary boat operator. He served in the Coast Guard and has 20 years or more with the GPD. Exhibit 10, p. 203. Simoes is currently the secondary boat operator. Exhibit 10, pp. 252-253.

Simoes' "slow pay" allegation also does not relate to his service in the Coast Guard. In 2014, Simoes and other officers were receiving slow pay for details they had worked. Exhibit 10, pp. 165-169. In August 2016, Simoes submitted a harassment complaint. Exhibit 14; Exhibit 10, pp. 157-158, 169-170. In his complaint, Simoes alleges that in June of 2014, he requested to be paid for details that he had completed 30-60 days before, along with suggesting a solution so that employees would know specifically what jobs they are being paid for. Exhibit 14. Christina Melillo (Chief Campanello's secretary or business manager) did not have payment issued so

Simoes went to another GPD employee Stacey Nicastro who fixed the issue so that Simoes was paid. He never had slow pay after that. Exhibit 10, pp. 166-168. Simoes alleges that the following week after he went to Nicastro, Melillo purposely and aggressively dropped her shoulder into his while walking by him. Exhibit 14.

The only allegation that Simoes remotely ties to his service in the Coast Guard is his dubious claim that in 2014 Campanello "aggressively and purposely dropp[ed] his shoulder into me as a retaliation for not producing military orders for him." Exhibit 14. Simoes admits that many Gloucester police officers have been involved in military service. Exhibit 10, p. 30. Nevertheless, even if considered true for the purposes of summary judgment, the City cannot be held liable for such an action because any such assault and battery would fall outside the scope of Campanello's employment. Conduct falls outside scope of employment where it is "different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master." Restatement (Second) of Agency § 228(2) (1958); Doe v. Purity Supreme, Inc., 422 Mass. 563, 568 (1996).[2] Simoes' allegation does not reasonably permit a jury to infer any sort of congruence between Campanello's "dropping his shoulder" and the purpose of his employment as a chief of police.

There was an issue where the Coast Guard was not giving Simoes proper notification for when he needed to miss weekend shifts at the GPD. Exhibit 9, pp. 71-72. For his reserve Coast Guard annual two-week active-duty training, Simoes would submit the military orders to the

---

[2] Because the incident occurred in Massachusetts, the law of the Commonwealth applies. Davric Maine Corp. v. U.S. Postal Service, 238 F.3d 58, 65 (1st Cir. 2001). In Massachusetts, an act is within the scope of employment (1) if it is of the kind he or she is employed to perform; (2) if it occurs substantially within the authorized time and space limits; and (3) if it is motivated, at least in part, by a purpose to serve the employer. Kelly v. United States, 924 F.2d 355, 356 (1st Cir. 1991), quoting Wang Laboratories, Inc. v. Business Incentives, Inc., 398 Mass. 854, 859, 501 N.E.2d 1163 (1986).

GPD. Exhibit 10, pp. 43-44. When his scheduled weekend trainings would change, however, the Coast Guard would only send Simoes a text or give him a call. Exhibit 10, pp. 43-44. Simoes would therefore not have documentation to give to the GPD regarding his schedule change. Exhibit 10, pp. 43-46. McCarthy told Simoes that he needed to get a schedule to his watch commander ahead of time because it was costing the department to unexpectedly hold officers over on shifts or give discretionary time out. Exhibit 9, p. 75. Such requests do not constitute an adverse employment action.

Finally, Simoes passed the sergeant's exam in 2014 (Exhibit 10, pp. 147-148), however, the FY2015 budget did not allow for the promotion of a sergeant's position. **Exhibit 16 – Budget FY2015, pp. 1-5.**

As a result, summary judgment should enter for the City because Simoes cannot adduce evidence that his military status was a motivating or substantial factor for any adverse employment action.

     **C.**     **Alves and Simoes cannot succeed under a hostile work environment theory**

The undisputed evidence does not support a USERRA claim based on a theory of a hostile work environment. To succeed on such a claim, Alves and Simoes must offer "evidence that [the City's] conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive work environment." Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993). "[W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all of the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." Harris, 510 U.S. at 23. In light of the undisputed facts in this case, no reasonable jury could find

that either Alves or Simoes' work environment was so "threatening or humiliating" or beyond the capacity of a reasonable police officer in their circumstances to endure. See Conners v. Billerica Police Dep't, 679 F. Supp. 2d 218, 228 (D. Mass. 2010). Accordingly, judgment should enter for the City on the Plaintiffs' USERRA claims (Counts I and II).

## III.   PLAINTIFFS' § 1983 CLAIMS FAIL AS A MATTER OF LAW

### A.   Plaintiff's § 1983 claims are preempted by their USERRA claims

The Plaintiffs' constitutional claims under 42 U.S.C. § 1983 fail as a matter of law because they are preempted by USERRA. The statute provides a comprehensive enforcement mechanism and subsumes constitutional claims. Satterfield v. Borough of Schuylkill Haven, 12 F.Supp.2d 423, 438 (E.D.Pa. 1998) (finding that plaintiff's constitutional claim under the Equal Protection clause of the Fourteenth Amendment and § 1983 was preempted by USERRA as it provides an exclusive statutory remedy for anti-military discrimination); Morris-Hayes v. Board of Educ. of Chester Union Free School Dist., 423 F.3d 153, 161 (2d Cir. 2005) (finding that USERRA is the exclusive means by which an individual may enforce the protections provided by the statute because the "comprehensive scheme would be distorted by permitting enforcement by means of actions brought under Section 1983"); Ferguson v. Walker, 397 F.Supp.2d 964, 971 (C.D. Ill. 2005) (holding that "Plaintiff's § 1983 claims are subsumed by USERRA").

Here, it has been established that the Plaintiffs' § 1983 claims are based upon the same factual allegations as their USERRA claims. Alves v. City of Gloucester, 2019 WL 267462, at *6, 7. Therefore, the Plaintiffs' constitutional claims under § 1983 – whether styled as equal protection, due process or First Amendment violations – are preempted by USERRA. USERRA affords a complete remedial mechanism to the Plaintiffs' claims and to allow them to also bring constitutional claims under § 1983 would only serve to bypass that mechanism. See Bello v. Village of Skokie, 2014 WL 434439, No. 14C1718, at *7 (N.D.Ill. 2014) (holding that

"USERRA's comprehensive remedial structure reflects congressional intent to supersede a plaintiff's ability to assert parallel claims under section 1983"). The Plaintiffs' § 1983 claims therefore fail as a matter of law. Accordingly, judgment should enter for the City as to the Plaintiffs' claims under § 1983 (Counts III and IV).

**B.      Any First Amendment claim fails as a matter of law**

A First Amendment claim would fail because neither of the Plaintiffs spoke as a citizen on a matter of public concern. The Pickering balancing test is applied to First Amendment claims by public employees. See Pereira v. Commissioner of Social Servs. 432 Mass. 251, 257 & n.15 (2000); Decotiis v. Whittemore, 635 F.3d 22, 29-30 (1st Cir. 2001). In the first step, the inquiry for the court is whether the employee spoke "as a citizen upon matters of public concern." Connick v. Myers, 461 U.S. 138, 147 (1983). If the first step is established, in the second step the court balances the interest of the employee speaking out as a citizen on matters of public concern and "the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." Pickering v. Board of Educ., 391 U.S. 563, 568 (1968). See Decotiis, 635 F.3d at 35 (describing Pickering test as attempt to "balance the value of an employee's speech -- both the employee's own interests and the public's interest in the information the employee seeks to impart -- against the employer's legitimate government interest in preventing unnecessary disruptions and inefficiencies in carrying out its public service mission").

Here, Simoes was not speaking as a citizen on a matter of public concern when he wore a "Free Cliffy" t-shirt to the police department to support Alves who was on paid administrative leave pending an investigation of his shooting another officer. Exhibit 10, pp. 117-124. Simoes thought the investigation was taking too long. Exhibit 10, pp. 117-124. This is a mere workplace

gripe on behalf of a co-worker and union member, and not a matter of public concern by a citizen.

A First Amendment claim would also fail on the second prong or disruption inquiry. Government employers have "legitimate interest[s] in the effective and efficient fulfillment of [their] responsibilities to the public, including promot[ing] efficiency and integrity in the discharge of official duties, and maintain[ing] proper discipline in public service." Lane v. Franks, 573 U.S. 228, 242 (2014). Factors relevant to the disruption inquiry include whether the employee's statements directly went to impairing discipline by superiors, disrupting harmony and creating friction in working relationships, undermining confidence in the administration, and interfering with the regular operation of the enterprise. Curran v. Cousins, 509 F.3d 36, 4445 (1st Cir. 2007). See Rankin v. McPherson, 483 U.S. 378, 388, 107 S.Ct. 2891 (1987) ("Interference with work, personnel relationships, or the speaker's job performance can detract from the public employer's function; avoiding such interference can be a strong [S]tate interest"). "In general, government interests outweigh First Amendment rights when employee speech prevents efficient provision of government services or disrupts the workplace." Torres-Rosado v. Rotger-Sabat, 335 F.3d 1, 13 (1st Cir. 2003).

Here, the "Free Cliffy" t-shirts worn in the police department went directly to disrupting order, harmony and respect for internal investigations and the chain of command. Where, as here, the interests of the employer outweighed those of the employee and the public, Simoes' speech on his t-shirt worn at the GPD was not constitutionally protected under the Pickering test. Therefore, any First Amendment claim fails as a matter of law (Counts III and IV).

14

**C.   Plaintiffs cannot adduce evidence that a City policy caused a constitutional violation or that a City policy making official acted with "deliberate indifference."**

The Plaintiffs cannot establish a claim for municipal liability under § 1983 against the City because they cannot adduce evidence of a policy or custom, or that a formal decision by a person with final policymaking authority acted with the requisite "deliberate indifference." To establish municipal liability under § 1983, a plaintiff must not only identify conduct attributable to the municipality but must prove that "action pursuant to official municipal policy" caused an injury. "Municipal liability requires both the existence of a policy or custom and a causal link between that policy and the constitutional harm." Oberg v. City of Taunton, 972 F. Supp. 2d 174, 192 (D. Mass. 2013); Monell v. Dept. of Soc. Serv. of City of N.Y., 436 U.S. 658, 690 (1978).

"A plaintiff can establish the existence of an official policy by showing that the alleged constitutional injury was caused by a formal decision of a municipal legislative body, see e.g., Owen v. City of Independence, 445 U.S. 622 ... (1980), or by a person with final policymaking authority. See City of St. Louis v. Praprotnik, 485 U.S. 112, 123-24 (1988)." Welch v. Ciampa, 542 F.3d 927, 941-42 (1st Cir. 2008). "[W]hile 'liability may not be imposed on a municipality for a single instance of misconduct by an official lacking final policy making authority,' liability does attach under § 1983 '"where the decisionmaker possesses final authority to establish municipal policy with respect to the action ordered." ' " Meagher v. Andover Sch. Comm., 94 F. Supp. 3d 21, 44 (D. Mass. 2015), quoting Welch, 542 F.3d at 42, quoting Pembauer v. City of Cincinnati, 475 U.S. 469, 481 (1986). However, "[a] City is liable under Monell for the acts of a final policymaker only if those acts constitute deliberate indifference." Saldivar v. Racine, 818 F.3d 14, 20 (1st Cir. 2016), citing Connick v. Thompson, 563 U.S. 51, 61 (2011); Young v. City of Providence, 404 F.3d 4, 26 (1st Cir. 2005). When

determining whether a decisionmaker exercises final authority, "[c]ourts must look to state law, including valid local ordinances and regulations, for descriptions of the duties and obligations of putative policymakers in the relevant area at issue." Walden v. City of Providence, 596 F.3d 38, 56 (1st Cir. 2010).

Here, the Plaintiffs cannot offer evidence to support an inference than an official policy or custom of the City caused a constitutional violation or that any policymaking official acted with deliberate indifference toward them. Rather, the Plaintiffs allege that Simoes was removed as a firearms instructor for one week after wearing a "Free Cliffy" t-shirt to the police department to support Alves while Alves was on paid administrative leave pending an investigation of his shooting another officer. Exhibit 10, pp. 117-124. Absent evidence of an official policy or an official acting with deliberate indifference, the Plaintiffs fail to do more than merely claim respondeat superior liability on the part of the City. Therefore, summary judgment should enter for the City on the Plaintiffs' claims under § 1983 (Counts III and IV).

IV.     **CONCLUSION**

For the foregoing reasons, the City of Gloucester respectfully requests that this Honorable Court enter judgment in its favor as to all counts in the Plaintiffs' First Amended Complaint under Fed. R. Civ. P. 56.

> Respectfully submitted,
> The Defendant,
> City of Gloucester,
> By its attorneys,
>
> /s/ Thomas R. Donohue
> Thomas R. Donohue, BBO# 643483
> BRODY, HARDOON, PERKINS & KESTEN, LLP
> 699 Boylston Street, 12th Floor
> Boston, MA 02116
> (617) 880-7100
> tdonohue@bhpklaw.com

DATED: February 10, 2021

16

**CERTIFICATE OF SERVICE**

       I hereby certify that this document was filed through the ECF system and will therefore be sent electronically to the registered participants as identified on the Notice of Electric Filing (NEF) and paper copies will be sent this day to those participants indicated as non-registered participants.

*/s/ Thomas R. Donohue*
Thomas R. Donohue, BBO# 643483

DATED: February 10, 2021